UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ANGEL JESUS GUAMAN CHIMBORAZO,<br><br>      Petitioner<br><br>v.<br><br>CRAIG SHEPLEY, Deputy Chief Patrol Agent for Fort Fairfield Sector, U.S. Customs and Border Protection, *et al.*,<br><br>      Respondents | No. 1:25-cv-00552-LEW |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Angel Jesus Guaman Chimborazo's Amended Petition for Writ of Habeas Corpus (ECF No. 6). Petitioner seeks release from immigration detention. Federal Respondents have opposed the Petition. Return and Response (ECF No. 7). The question is whether a four-year alien resident of the United States who enjoyed more than two years of special immigrant juvenile status is subject to arrest without opportunity for parole pending removal or is entitled to a parole hearing to evaluate the appropriateness of release pending removal. For reasons that follow, the Petition is granted.

## BACKGROUND

Petitioner is a citizen of Ecuador who is presently in custody following seizure by local law enforcement and detention by Customs and Border Protection ("CBP") officers. He is presently held at the Fort Fairfield CBP Station in Fort Fairfield, Maine. Prior to his detention, Petitioner resided in Bangor, Maine, with his sister. Am. Pet. ¶ 1, 8.

Petitioner entered the United States on May 13, 2021, when he was sixteen years old, as an unaccompanied alien child ("UAC"). *Id.* ¶ 3. Petitioner was apprehended at the border and then transferred by the Department of Homeland Security ("DHS") to the custody of the Office of Refugee Resettlement ("ORR"). *Id.* ORR is a sub-agency of the Department of Health and Human Services ("HHS"). *Id.* On June 5, 2021, ORR released Petitioner into the custody of an adult first cousin, pursuant to § 462 of the Homeland Security Act of 2002, 6 U.S.C. § 279, and § 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232. *Id.* On September 29, 2021, DHS initiated removal proceedings against the Petitioner pursuant to 8 U.S.C. § 1229a. *Id.* ¶ 5.

On March 15, 2023, when Petitioner was 18 years old, United States Citizenship and Immigration Services ("USCIS") approved Petitioner's Form I-360 Petition for special immigrant juvenile ("SIJ") status[1] with deferred action from removal from the United

---

[1] Special immigrant juvenile status is defined as follows:

> [A]n immigrant who is present in the United States
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's

States.  USCIS approved Petitioner's SIJ status based on his abandonment by his biological parents and his placement with his first cousin.  Petitioner contends that the deferment and special status conferred by I-360 reinforces his claim of right to a bond hearing and the procedural due process it ensures.  Am. Pet. ¶ 6.

On September 2, 2025, Petitioner was arrested in Bangor, Maine, by local law enforcement for driving without a license and operating a vehicle under the influence of alcohol.  Those charges remain pending and Petitioner is set for a hearing on December 2, 2025.  Petitioner was not taken into custody at that time.  On November 1, 2025, Petitioner was arrested by local law enforcement in Harmon, Maine (presumably Hermon, Maine) during a traffic stop while Petitioner was the passenger in the vehicle of a coworker.  Petitioner was not charged with any crime in that incident, but the Hermon Police Department arrested Petitioner and transferred him to CBP at the Fort Fairfield CBP Station in Fort Fairfield, Maine, where he remains to this date.

On November 5, 2025, USCIS issued to Petitioner its Termination Notice (ECF No. 7-2), which terminated Petitioner's SIJ status and associated deferment of action on his removal.  The record also contains a report of Petitioner's immigration case, in which it is

---

parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—[exception omitted].

8 U.S.C. § 1101(a)(27)(J).  SIJ status is conferred by U.S. Citizenship and Immigration Services. *See* USCIS Policy Manual vol. 6, part J, ch. 4.  SIJs are "deemed . . . paroled into the United States."  8 U.S.C. § 1255(h)(1).

stated that his "master hearing" is scheduled for June 14, 2027. Resp. Ex. 3, EOIR Automated Case Information (ECF No. 7-3).

Petitioner maintains that his detention is unlawful under the Immigration and Nationality Act because he is being held subject to mandatory detention under 8 U.S.C. § 1225 pending removal proceedings without the possibility of parole. Pet. ¶ 7. He asserts that his initial release into the custody of HHS, subsequent release to the care of a family member, receipt of SIJ status, and the fact that he has residing in the United States for more than two years differentiates him from those persons who are detained at the border and subject to expedited removal proceedings under § 1225. Pet. ¶¶ 8, 20. Petitioner asserts that Respondents rely exclusively on § 1225 to support his detention and that, because it does not apply to him, his immediate release should be ordered. *Id.* ¶ 25.

In response, the Federal Respondents argue that the SIJ status development is of no moment in terms of access to a bond hearing, but they also acknowledge precedent from outside this District that is contrary to that conclusion. Return and Response at 3 (ECF No. 7) (*See, e.g.*, *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024); *Del Cid v. Bondi*, 3:25-cv-00304, 2025 WL 2985150, at *14-15 (W.D. Pa. Oct. 23, 2025); *Inlago Tocagon v. Moniz*, 25-cv-12453, 2025 WL 2778023, at *4-5 (D. Mass. Sept. 29, 2025)). Respondents also reveal that their approach in this case is governed by precedent issued by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Respondents offer that they must adhere to *Hurtado* absent an order from this Court. Return and Response at 3.

4

In reply, Petitioner argues he has been newly deemed to fall under § 1225's mandatory detention provision but repeatedly has been treated as a parolee prior to his recent seizure and detention, both as a child spared mandatory detention and released on recognizance following his arrival in 2021, and then following his receipt of SIJ status in 2023. Reply at 2-3 (ECF No. 8). Petitioner also supplements his allegations in his Reply. Specifically, he relates that on November 6, 2025, the same day as he filed his Reply in this Court, he filed a Motion for Custody Redetermination with the Chelmsford Immigration Court and is set for a bond hearing on November 13, 2025. *See* Petitioner's Notice of Custody Redetermination Hearing (ECF No. 8-4).

More recent filings by Petitioner indicate that the Assistant Chief Counsel for the Department of Justice Executive Office for Immigration Review issued a Notice of Ineligibility for Bond dated November 13, 2025, finding Petitioner ineligible for a bond because he has the status of an applicant for admission under 8 U.S.C. § 1225. In her Notice, the Assistant Chief Counsel stated that Petitioner "was never admitted or inspected and the respondent has remained in the United States without any status." Notice of Ineligibility for Bond at 1 (ECF No. 11). She further explained that the determination is based on an assessment that all aliens seeking admission who are not entitled to be admitted are subject to either the more severe expedited removal provision of § 1225(a) or the "catchall" provision of § 1225(b), and that, even in the latter case, the only opportunity for release from detention lies in 8 U.S.C. § 1182(d)(5), which does not change the alien's original status as an alien seeking admission at the border. Citing *Matter of Yajure Hurtado*, the Assistant Chief Counsel concluded that she is subject to the BIA's

determination that a "plain reading" of 8 U.S.C. § 1225(b)(2)(A) compels the conclusion that an immigration judge "does not have jurisdiction to hear a bond request by an applicant for admission, and that the [applicant] must be detained for the duration of their removal proceedings." Notice at 2. Consequently, Petitioner remains in CBP custody without the opportunity for release on bond.

The Court convened a hearing on November 20, 2025, at which it heard oral argument consistent with the foregoing background statement.

## DISCUSSION

The lawfulness of immigration detention is subject to judicial review and unlawful detention may be enjoined by a United States District Court under 28 U.S.C. § 2241. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021); *Aguilar v. United States Immigration and Customs Enforcement*, 510 F.3d 1, 11 (1st Cir. 2007). The petitioner must prove illegal detention by a preponderance of the evidence. *See Aditya W.H. v. Trump*, 782 F.Supp.3d 691, 703 (D. Minn. 2025); *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021).

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. am. V. "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Even aliens subject to a final order of removal are entitled to due process

6

consideration, including release from protracted detention pending removal. *Id.* at 693-94. However, "[t]he fact of detention alone is insufficient for a viable due process claim." *Chanaguana Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 WL 3013081, at *8 (D. Me. Oct. 28, 2025) (citing *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138 (2020) (recognizing, as to aliens who have never "been admitted into the country pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law")).

The Immigration and Nationality Act addresses the need for and parameters governing alien detention in two primary places, 8 U.S.C. § 1225 and 8 U.S.C. § 1226. Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Under its auspices, aliens who are arriving in the United States and are deemed inadmissible are treated as applicants for admission. Some such aliens—those having a status different from the status Petitioner had on his arrival—are subject to expedited removal under § 1225(b)(1) without a hearing.[2] The remainder, those who are "not clearly and beyond a doubt entitled to be admitted," are subject to removal but receive a hearing. Still, the statutory provision for a hearing does not include a right to release pending removal; instead, aliens falling into the catchall are subject to detention pending the conclusion of the removal proceedings, under § 1225(b)(2).

---

[2] "Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is 'found not to have such a fear,' he is detained until removed." *Chanaguana Caiza*, 2025 WL 3013081, at *8 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (B)(iii)(IV)).

Both of the § 1225 categories for arriving aliens anticipate the presence of both an "immigration officer" presently engaged in "inspecting" and "screening" aliens and an alien who is presently "seeking admission." 8 U.S.C. §§ 1225(a)(1), (3), (5) & 1225(b)(1)(A), (2)(A). Members of either class of arriving alien can be paroled from detention or custody, on a case-by-case basis, "for urgent humanitarian reasons or significant public benefit," but such parole is not equated with "admission." 8 U.S.C. § 1182(d)(5)(A); *see also*, *generally*, *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1182(d)(5)(A) parole, upon expiration, returns the alien to the condition of an alien seeking admission at the border. 8 U.S.C. § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission … and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled ….").

Section 1226 is entitled "Apprehension and detention of aliens." 8 U.S.C. § 1226. It states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id*. § 1226(a). Unlike § 1225, § 1226 anticipates a situation in which the Attorney General arrests and detains an alien at liberty in the United States, and authorizes an exercise of discretion in terms of whether the alien will be detained during the pendency of removal proceedings or released on bond or conditional release, *id*. § 1226(a)(2), with an exception that mandates detention for certain "criminal aliens," *id*. § 1226(c). The Attorney General's exercise of discretion under § 1226(a)(2) is not subject to judicial review, *id*. § 1226(e), but a refusal to exercise the discretion by not holding a hearing to evaluate a

bond or conditional release request is. *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *see also* 8 C.F.R. § 236.1(d)(1) (2025).

In summary, the INA "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) [and] also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. The detention of non-criminal aliens already in the country is subject to the bond/conditional release hearing process. *Brito*, 22 F.4th at 244. The detention of aliens seeking admission under § 1225 is not. *Thuraissigiam*, 591 U.S. at 138; *Chanaguana Caiza*, 2025 WL 3013081, at *6-8 (denying habeas release to alien initially subject to § 1225 detention who was paroled for humanitarian reasons—lack of detention capacity—under § 1182, where parole was subject to reporting requirement and automatically expired within 60 days (applying 8 C.F.R. § 212.5(e)(1), (2) ("Parole of aliens into the United States"))).

Petitioner maintains that his parole status is special because it is a product of 8 U.S.C. § 1232 and § 1101(a)(27)(J) in combination with § 1255, rather than § 1182, and that he, therefore, is not subject to an expiration of parole that would return him to the § 1225 "arriving alien" status he originally had when he was apprehended at the border. That special status entails UAC-based release into the custody of HHS rather than DHS, HHS's subsequent decision to release Petitioner into the custody of a family member, and USCIS's grant of SIJ status (notwithstanding its recent, post-detention termination of the

same). These circumstances, in Petitioner's view, entitle him to the procedural protection afforded to aliens under § 1226. Am. Pet. ¶ 6.

In § 1232, Congress enacted legislation that accords special treatment to UACs. The statute distinguishes between UACs from continuous countries and those from noncontiguous countries. 8 U.S.C. § 1232(a)(2), (3). As an Ecuadoran national, Petitioner was in the latter category. UACs apprehended at the border are transferred to the custody of the Secretary of HHS, who then acts to ensure a safe and secure placement pending further immigration consideration. *Id.* § 1232(b)(1), (c)(2). Upon reaching the age of 18, authority over custody determinations returns to the Secretary of DHS, *id.* § 1232(c)(2)(B), but Congress still requires "placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." *Id.*

By processing UACs through § 1232, to include release into the care and custody of HHS and family members, it is not clear that Congress intended to prescribe arrest and mandatory detention for UACs based on § 1225 "arriving alien" status whenever those individuals come into contact with a DHS or ICE or CBP agent who decides to detain them. The UAC release specified by Congress in § 1232 does not include a provision that returns aliens to the § 1225 status they held when first detained at or near a national boundary, although Congress was familiar with that approach given its enactment of such a provision in § 1182.

Furthermore, the Executive Branch had conferred upon Petitioner SIJ status. That status reflects the existence of significant community or family contacts within the United States and places the individual closer to the status of a lawful permanent resident. 8 C.F.R.

10

§ 204.11; USCIS Policy Manual Vol. 6, Part J. The due process expectations that would arise for a reasonable individual with SIJ status in relation to summary detention without possibility of parole pending a removal order would most certainly be elevated.

Because release (or "parole") under § 1232 is a different status than humanitarian or public benefit parole under § 1182, and because SIJ status is a "special" status conferred by administrative process, I conclude that these distinctions logically call for a construction of the INA that places UACs with SIJ status in a preferred position for purposes of the § 1225 ("arriving alien") versus § 1226 ("apprehension and detention") dichotomy when it comes to pre-removal detention.[3] *See Portillo Martinez v. Hyde*, No. 25-cv-11909-BEM, 2025 WL 3152847 (D. Mass. Nov. 12, 2025); *Lopez Sarmiento v. Perry*, No. 1:25-cv-01644-WBP, 2025 WL 3091140 (E.D. Va. Nov. 5, 2025). Additionally, assuming there is room for doubt on the 1225/1226 question, for due process purposes Petitioner's former SIJ status reasonably augments his "arriving alien" status and warrants procedural protection greater than that afforded to aliens arriving at the border and seeking admission or deemed to retain arriving/seeking status notwithstanding their parole under § 1182. *Inlago Tocagon v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2778023, at *4 (D. Mass. Sept. 29, 2025); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024); *see also*, *c.f.*, *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 158 (3d Cir. 2018) ("The protections afforded to children with SIJ status include an array of statutory and regulatory

---

[3] Persuasive authority suggests that, even as to parole under § 1182, with its denial of "admission" status, it is not a foregone conclusion that all aliens paroled thereunder logically qualify as "arriving aliens" subject to seizure and mandatory detention under § 1225 simply based on the fact that they are aliens present in the United States who are subject to removal.

rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents ('LPR'), exemption from various grounds of inadmissibility, and robust procedural protections to ensure their status is not revoked without good cause.").

With this INA background analysis in place, I turn to the issue of due process. In due process parlance, the relevant factors for assessing the need for more process are "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hernandez-Lara v. Lyons*, 10 F.4th at 28 (internal quotation marks omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). When I consider these factors in light of the preceding discussion of the factual and legal landscape, I am persuaded that Petitioner is entitled to a parole hearing.

In terms of Petitioner's private interest, liberty is the norm in our society and summary detention without the possibility of parole is the exception. *Id.* Given Petitioner's former SIJ status, years of residence in the United States, and the associated ties to the community, it is appropriate that his detention be treated as a matter of discretion.

In terms of the risk of an erroneous deprivation, certainly release affords more reliable access to counsel and evidence, both in terms of removal proceedings and in terms of any state court proceedings that Petitioner must face.

Finally, in terms of the Government's interest, it is of course a fiscal and administrative burden to provide the hearing associated with the exercise of parole discretion. However, based on my review of this case and many others like it, my impression is that the Government's indiscriminate application of § 1225 does not appear to actually serve a fiscal interest. After all, if a right to a hearing is established, immigration judges (or front-line immigration officials) likely would, in many cases, release alien detainees who would safely rejoin the community, maintain work, and see to their own care and housing pending their removal hearing. It also strikes me that the Government's indiscriminate application of § 1225 does not well serve an administrative interest. It appears, instead, that the Government is filling up community detention centers at taxpayer expense and imposing a very substantial administrative burden on the impacted federal agencies and facilities (and on their state counterparts) without achieving any apparent efficiencies in terms of processing removals. At the very least, the Government has made no effort to show otherwise.[4]

As applied to Petitioner, this predicament does not square with procedural due process.

## CONCLUSION

For the foregoing reasons, the Petition for a writ of habeas corpus is GRANTED. It is HEREBY ORDERED that in order for Respondents to continue detaining Petitioner they

---

[4] Arguably, given my assessment that the legal landscape set out in the INA favors Petitioner, the Federal Respondents might provide something more than a citation to the BIA's *Matter of Hurtado* ruling to overcome a due process challenge. Here, the Federal Respondents have not offered anything of weight for the Court to consider that would recommend mandatory detention for all current or former SIJ-status aliens picked up by local law enforcement with "master hearings" scheduled more than one year out.

must hold a hearing within 7 days before an immigration judge to consider Petitioner's request for release on bond pending the conclusion of removal proceedings. If a bond hearing is held, Respondents will release Petitioner on bond unless the Government carries the burden prescribed by the First Circuit in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021). If a hearing is not held, Respondents will release Petitioner no later than 7 days from the date of this Order. During the 7-day period, the removal of Petitioner from the District of Maine is ENJOINED except to enable attendance at a bond hearing in the District of Massachusetts, if that is where the hearing is held.

**SO ORDERED.**

Dated this 20th day of November, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge